

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed December 20, 2005

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
IN RE:                           §
                                 §
SHIRLEY F. MARSHALL,             §    CASE NO. 04-36624-SAF-13
                                 §
     D E B T O R(S).             §
```

**MEMORANDUM DECISION**

On August 25, 2005, the objection of Shirley F. Marshall ("Debtor") to the second amended proof of claim of Peak Financial Partners, Inc. ("Peak") (Ex. 3) was heard. This matter was taken under advisement by Judge Steven A. Felsenthal and not ruled on before he left office. With the consent of debtor and Peak's counsel, the court has reviewed the transcript of the hearing on August 23, 2005, and the exhibits submitted at such hearing, and ruled on such objection without further argument by the parties.

The court has core jurisdiction of this matter under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (K), and 1334.

Debtor has two basic contentions. First, debtor asserts

that Peak or its predecessor's servicer on the mechanic's lien on the property, United Mortgage & Loan Investment Corp. ("United"), previously accelerated the loan on the property, and such debt is allegedly therefore barred by limitations.  Alternatively, debtor claims that it is entitled to an offset on the debt for defective workmanship of the initial home improvement.

Debtor bought her house, the homestead, in 1971.  But for the mechanic's lien contract, the house is paid off.  She paid off the first mortgage on the house in late 2001 or close to 2002.  The work in question was done in 1995.  *See* Ex. 3.  The mechanic's lien initially was taken by Custom Home Remodeling and is presently owned by Peak.

Debtor stopped making payment on the note in question in 1998 when she went through a separation.  She did not make any further payments until 2004.  When debtor received the letter of June 1, 2004 from United, referred to hereafter, she contacted United, and they had discussions about possible repairs.  The person to whom she was talking asked for $150 by "tomorrow" as a good faith deposit, which debtor sent and the servicer accepted.

On or about June 1, 2004, debtor received a certified letter dated June 1, 2004 from United regarding her home, reading as follows:

> Dear SHIRLEY F. MARSHALL:
>
> United Mortgage & Loan Investment Corp. is the servicer of the Mortgage on your property.
>
> You are hereby notified that there presently exists a default of your Mortgage.  <u>The default is your failure to pay the balance in full on 05/05/1998</u>.
>
> To <u>cure this default, you must pay United Mortgage & Loan Investment Corp. on or before 07/01/2004 the total sum of $38,107.28</u>.
>
> Failure to cure this default on or before 07/01/2004 may result in legal action to begin without further notice.

(Ex. 2)(emphasis added).

Texas Civil Practice and Remedies Code § 16.035(a) provides that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (Vernon 2005).  Section (e) of such statute provides in pertinent part: "If . . . a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the last . . . installment."  *See also* 50 TEX. JUR. 3D *Limitation of Actions* § 100 (2005)(highlighting foreclosure of mechanic's liens in conjunction with installment payments).

Under the May 1, 1995 mechanic's lien contract in question (Ex. 1), the principal of the note, $19,500, was payable in 180 installments of $266.18, *i.e.*, a fifteen year term concluding in

2010.

Debtor's attorney contends United's June 1, 2004 letter quoted above shows that the debt must have been accelerated previously in full on May 5, 1998, and therefore the debt was allegedly barred by the four year statute of limitations on May 5, 2002. In the case of *Holy Cross Church of God in Christ v. Wolf*, the Texas Supreme Court construed Texas Civil Practice and Remedies Code § 16.035(e) and held:

> If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate. *Hammann v. H.J. McMullen & Co.,* 122 Tex. 476, 62 S.W.2d 59, 61 (1933); *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex.Civ.App.--Galveston 1939, writ ref'd). Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *See Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991); *Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 233 (Tex. 1982). Both notices must be "clear and unequivocal." *Shumway*, 801 S.W.2d at 893. Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity. *City Nat'l Bank v. Pope*, 260 S.W. 903, 905 (Tex.Civ.App.--San Antonio 1924, no writ); *see also San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901) (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken"); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex.Civ.App.--Tyler 1974, no writ) (explaining that an option to accelerate may be withdrawn or revoked after it is exercised by the noteholder, effectively restoring the note's original maturity date).

*Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). As the Texas Supreme Court indicates in the *Holy Cross* opinion, both the notice of intent to accelerate and notice of acceleration must be "clear and unequivocal." Id. at 566. Since there was no demand produced for the period prior to May 5, 1998, accelerating full payment for May 5, 1998, any notice of intent to accelerate and any notice of acceleration was not clear and unequivocal.

The four year limitations applied to the June 1, 2004 letter would not begin to run on the date of such letter not only because it was not clear and unequivocal, but further because "[e]ven when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments," *id.* at 567, and United did ask for and accept a $150 payment thereafter.

DEBTOR'S OFFSET CLAIM IS NOT BARRED BY LIMITATIONS

Debtor's offset claim is not barred by limitations because it arises out of the same transaction made the basis of Peak's secured debt. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (Vernon 2005)(citing numerous cases); 50 TEX. JUR. 3D *Limitation of Actions* §§ 16, 18, 163 (2005).

Debtor submitted a list of repairs needed for the kitchen (multiple repairs listed), the storm door (multiple repairs listed), and the door bell (multiple repairs listed), totaling

$6,800.  *See* Ex. 4.  Debtor contended same were necessitated by the faulty workmanship of the remodeling company in 1995, however, such list was a total figure with no individual item breakdown.  Further, it appears that such exhibits and testimony initially came into evidence only as a communication and not necessarily for the truth of what it would cost to fix the various items (Tr. at 23:20-22), although at the end of trial Peak did not object to the admission of Exhibit 4 (Tr. at 39:25 to 40:1-4).

Peak's expert, Mr. Brewer, testified about some of the alleged deficiencies in workmanship from the home improvements done (Tr. at 21:3-16).  However, from debtor's side, there was insufficient testimony concerning costs.  Mr. Brewer initially testified (Tr. at 26-38) that to do all the items on debtor's list probably would cost $6,800 (Tr. at 28:10-13).  He furnished his report to Peak, which was admitted into evidence as Exhibit 2, which downplayed many of the items on debtor's list as being attributable to normal wear and tear from ten year's use or possible property misuse (*e.g.*, dishwasher overload, abuse of hinges on doors by slamming, cabinet overload, etc.).

Mr. Brewer conceded the following possible costs:

    (a)  counter top screws                      $ 60
    (b)  kitchen sink leak                        200
    (c)  door bell problem                        400

  (d) coat base around wall       <u>100</u>

    Total          $760

In sum he estimated the repair items at $700 to $800, and he attributed the other problems to "maybe limited abuse, but I think ordinary wear and tear is the bulk of it."  (Tr. at 37:24-25)

  Debtor is allowed an offset claim of $1,300 on Peak's second amended proof of claim, but otherwise debtor's objection to such claim is overruled.

      ###END OF MEMORANDUM DECISION###